

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2002

# O.J. v. Bd Ed Orange Twp

Precedential or Non-Precedential:

Docket No. 01-3690

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"O.J. v. Bd Ed Orange Twp" (2002). *2002 Decisions.* Paper 278.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/278

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 16, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3690

J.O., on behalf of C.O., and J.O.,
      Appellant

v.

ORANGE TOWNSHIP BOARD OF EDUCATION

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 00-cv-3792)
District Judge: Hon. William G. Bassler

Submitted Under Third Circuit LAR 34.1(a)
April 4, 2002

Before: SLOVITER, BARRY and ALARCON,*
Circuit Judges

(Filed April 16, 2002)

Ruth Deale Lowenkron
 On the Brief
Education Law Center
Newark, New Jersey 07102

 Attorney for Appellants

_____

* Hon. Arthur L. Alarcon, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.

        Nathanya G. Simon
        Cynthia S. Ham
         Of Counsel and On the Brief
        Schwartz Simon Edelstein Celso &
         Kessler, LLP
        Florham Park, New Jersey 07932

         Attorneys for Appellee

        David F. Abernethy
        Kimberly M. Coffina
        Peter J. Gallagher
        Drinker Biddle & Reath LLP
        Philadelphia, PA 19103

         Attorneys for Amici Curiae,
        The American Civil Liberties Union
        of New Jersey, ARC of New Jersey,

        Disability Rights Advocates, The
        National Association of Protection
        and Advocacy Systems, The New
        Jersey Coalition for Inclusive
        Education, Inc., New Jersey Parent
        Advocacy, Training and Help, New
        Jersey Protection and Advocacy,
        Inc., The Rutgers School of Law-
        Newark Special Education Clinic,
        and United Cerebral Palsy
        Associations

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant J.O., on her own behalf and on behalf of her son, C.O., brought suit in the United States District Court for the District of New Jersey seeking prevailing party attorney's fees and costs for an administrative proceeding conducted pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. S 1400 et seq. (2001). In an emergency hearing, an ALJ denied the petition of the Orange Township Board of Education ("Board") requesting an order that C.O. be home-schooled pending the

2

determination of an appropriate educational placement and granted J.O.'s counter-petition requesting C.O.'s immediate reinstatement to school and the performance of a functional behavioral assessment of C.O. by a specialist upon the consent of the parties.

On a motion for summary judgment, the District Court denied J.O.'s request for attorney's fees, concluding that the relief given by the ALJ was temporary in nature and did not constitute substantial relief on the merits. 1 J.O. timely appealed.

I.

FACTS AND PROCEDURAL BACKGROUND

At the time this action was commenced, C.O. was a fifteen-year old student at Orange High School in New Jersey exhibiting behavioral difficulties. Neither the parties nor the District Court dispute that C.O. was eligible for the protections of the IDEA, though he had not been evaluated by the time of these actions.

Due to a number of alleged incidents during the 1999-2000 school year, C.O. was suspended from school three different times for a total of more than seventy days. Between November 17, 1999 and March 28, 2000, C.O. was only permitted in school for ten days. He received only limited home instruction during a portion of that time period.

On March 15, 2000, while C.O. was still suspended, the Board filed a motion for emergency relief with the New Jersey Department of Education, Office of Special Education Programs, seeking to (1) "place C.O. on home instruction until such time that an appropriate educational placement can be found for him," and (2) compel C.O. to

_____

1. In its answer to appellants' complaint, the Board asked for dismissal of the complaint with prejudice and an award of "attorneys' fees, costs of suit and such other relief as the Court may deem appropriate." App. at 31. The District Court does not appear to have ruled on these motions and thus we will treat them as denied.

3

participate in special Child Study Team evaluations. App. at 14, 25. On March 22, 2000, J.O., C.O.'s mother, filed a cross-petition on C.O.'s behalf, seeking to enjoin the Board to (1) immediately reinstate C.O. to Orange High School, (2) "hire a behavioral specialist to perform a Functional Behavioral Assessment of C.O. and establish a Behavior Intervention Plan," (3) assess C.O.'s educational needs and respond to those needs, (4) assess the instruction that C.O. missed while suspended and provide the missed instruction, and (5) permanently enjoin the Board from suspending C.O. in the future absent the provision of the requirements of the IDEA and procedural due process. App. at 14-15. On that same day, J.O. also filed another application with the Commissioner of Education requesting injunctive relief, which was reserved by the ALJ for a future final hearing.

The matter was transferred to the New Jersey Office of Administrative Law and, on March 28, 2000, an emergency relief hearing was held before an ALJ. As an initial matter, the ALJ noted that J.O. represented to the ALJ that she would make C.O. available for the Child Study Team evaluations, thus eliminating the need to rule on the Board's request for an order compelling C.O. to participate. The ALJ denied the Board's motion in its entirety and granted appellants' request to have C.O. immediately reinstated in Orange High School. The ALJ also ordered that "upon consent of the parties," the Board must hire a behavioral specialist to perform an assessment of, and establish a plan for, C.O. App. at 14. The rest of the appellants' requests were denied. Appellants moved out of the Orange Township School District shortly after this ruling so there were no further administrative proceedings concerning C.O.'s education.

On August 7, 2000, appellants filed suit in the District Court seeking attorney's fees and costs as the prevailing party in the administrative proceeding. The District Court denied appellants' application for fees, concluding that the relief they attained was not the "permanent resolution of the merits of any of [appellants'] claims." App. at 6-7.

4

II.

DISCUSSION

A.

Jurisdiction and Standard of Review

The District Court had jurisdiction over this proceeding under the IDEA, 20 U.S.C. S 1415(i)(3)(A), and 28 U.S.C. S 1331. This court has jurisdiction over this final decision pursuant to 28 U.S.C. S 1291.

We review the District Court's findings of fact for clear error. See Holmes v. Millcreek Township Sch. Dist., 205 F.3d 583, 589 (3d Cir. 2000). "[W]e exercise plenary review over the legal issues relating to the appropriate standard under which to evaluate an application for attorney's fees." County of Morris v. Nationalist Movement, 273 F.3d 527, 535 (3d Cir. 2001).

B.

Standard for Prevailing Party Status Under the IDEA

The parties do not dispute that, under the IDEA, a prevailing party is entitled to seek attorney's fees and costs:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 U.S.C. S 1415(i)(3)(B).

Generally, parties are considered prevailing parties if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). This court articulated a two-prong test to determine if a party was a prevailing party: First, "whether plaintiffs achieved relief," and second, "whether there is a

causal connection between the litigation and the relief from the defendant." Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir. 1991).

A party need not achieve all of the relief requested nor even ultimately win the case to be eligible for a fee award. "[A]s long as a plaintiff achieves some of the benefit sought in a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment, the plaintiff can be considered the prevailing party for purposes of a fee award." Id. The relief need not be the exact relief requested

as long as it goes toward achieving the same goal. To succeed, "at a minimum . . . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Texas Teachers Ass'n v. Garland Sch. Dist., 489 U.S. 782, 792 (1989). The only clear exception to this "generous formulation" is where the plaintiff 's success is "purely technical or de minimus." Id. The degree of the party's success goes to the amount of the ultimate award, not to the availability of an award. Id. at 792-93.

The dispute in this case centers around the characterization of the relief achieved by the appellants -- specifically, the ALJ's order that the Board must allow C.O. to return to school. Appellants argue that they are prevailing parties because they successfully defended against the Board's petition and succeeded on the request in their cross-petition for a behavioral specialist and for the immediate reinstatement of C.O. to Orange High School, their alleged primary goal. Appellants argue this constituted substantial relief, noting that one of the main goals of the IDEA was to prevent "unconscionable exclusions of children with disabilities from schools." Appellants' Br. at 9.

The District Court concluded that the ALJ ordered the Board to reinstate C.O. to force C.O. to undergo a Child Study Team evaluation and that the ALJ elected to have C.O. educated at school rather than at home while this evaluation was undertaken. On this basis, the District Court concluded that the ALJ's decision to reinstate C.O. was analogous to a "stay-put" order and held that a party is not entitled to attorney's fees when only given interim

6

relief such as a stay-put order. App. at 8 (citing Hunger v. Leininger, 15 F.3d 664 (7th Cir. 1993)).

The stay-put provision of the IDEA provides in part that:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child . . . .

20 U.S.C. S 1415(j). Stay-put orders are designed to maintain the status quo during the course of proceedings. They "function[ ], in essence as an automatic preliminary injunction." Drinker v. Colonial Sch. Dist. , 78 F.3d 859, 864 (3d Cir. 1996) (describing the stay-put provision as"an absolute rule" to maintain the current educational placement "regardless" of the merits of the case).

Appellants present several arguments in support of their request for fees. First, they argue that their success in their request that the ALJ order the Board to hire a behavioral specialist to conduct a functional assessment of C.O.'s educational needs was substantial and warrants fees.

However, we cannot take issue with the District Court's dismissal of the relevance of this relief because the order to hire a behavior specialist was made contingent upon the "consent of the parties," a "consent" that does not appear on the record.

Second, and primarily, appellants argue that the return of C.O. to school and the corresponding denial of the Board's request to exclude C.O. from school constituted substantial relief entitling them to fees. They note that the IDEA was motivated by a concern that schools used disciplinary measures to exclude students with disabilities and students who were "hard-to-handle." Honig v. Doe, 484 U.S. 305, 324 (1988). One of the purposes of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C.S 1400(d)(1)(A).

The IDEA limits the circumstances under which a student can be suspended to very narrow instances in

which an institution can show by "substantial evidence" that a student is "substantially likely" to harm herself or others. 20 U.S.C. S 1415(k)(2)(A). In order to ensure access to education, a school cannot exclude a child without the consent of the parents unless it gets administrative or judicial permission. See Honig, 484 U.S. at 323-24. The ALJ's order directing the Board to readmit C.O. after over seventy days suspension admittedly reconfirmed this important interest. Appellants argue that the ALJ's order thus achieved their main goal, to get C.O. back in school, and that they did not have any requests regarding C.O.'s permanent placement.

In contrast, the District Court characterized the ALJ's order to reinstate C.O. as a temporary placement of C.O. in school pending further proceedings, analogous to a stay-put order, that did not affect the merits of C.O.'s permanent educational placement. In support of the District Court's conclusion, the Board points to a discourse that apparently occurred during the hearing before the ALJ. According to the Board, and not refuted by appellants, appellants asked the ALJ to rule on the propriety of the school's discipline of C.O. and the ALJ refused to so rule, stating that such a determination went beyond the confines of the emergency hearing. Appellee's Br. at 13. This response supports the characterization of the relief granted by the ALJ as a stay-put order limited to the then-present circumstances.

We note that the fact that there could have been future proceedings does not necessarily make attorney's fees unavailable for this stage of the proceeding. In Bagby v. Beal, 606 F.2d 411, 415 (3d Cir. 1979), we affirmed an award of attorney's fees where the plaintiff succeeded on her due process claim for a hearing, even though she ultimately lost at that hearing, because the interim relief

obtained (the hearing) remedied the violation.

The parties do not dispute that "a prevailing party can be awarded fees before the conclusion of protracted litigation." NAACP v. Wilmington Med. Ctr., Inc., 689 F.2d 1161, 1165 (3d Cir. 1982). "A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either pendent lite or at the conclusion of the litigation." Garland, 489 U.S. at 791. However, an interim

award is available "only when a party has prevailed on the merits of at least some of his claims." Hanrahan v. Hampton, 446 U.S. 754, 757-58 (1980).2

Several courts of appeals have held that a party cannot be a prevailing party if the interim relief received is not merit-based. See Bd. of Educ. of Oak Park v. Nathan R., 199 F.3d 377, 382 (7th Cir. 2000) (holding that the"invocation of the stay-put provision of the IDEA does not entitle the party to attorneys' fees"); Christopher P. by Norma P. v. Marcus, 915 F.2d 794, 804-05 (2d Cir. 1990) (finding that in the grant of a temporary restraining order, the ALJ did not make a determination on the merits or alter the legal relationship between the parties, but only preserved the status quo until a decision was rendered on the merits); Haley v. Pataki, 106 F.3d 478, 483 (2d Cir. 1997) (concluding that "[w]hen a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits"); Foreman v. Dallas County, 193 F.3d 314, 323 (5th Cir. 1999) ("A temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation. As such, a temporary restraining order cannot constitute the type [of] merit-based relief that affords a plaintiff prevailing party status.").

The District Court relied on J.C. v. Mendham Township Board of Education, 29 F. Supp. 2d 214 (D.N.J. 1998), for support. In J.C., the district court did not award attorney's fees to the parents where the school had agreed to the parents' demand for continued placement at a private school pending the final resolution of his case. Id. at 221-22. The district court concluded that the plaintiff was not entitled to attorney's fees when she received "no relief other

---

2. Appellants argue that the relief awarded was not designed to maintain the status quo since the status quo was that the Board was barring C.O. from school and that an affirmative act by the ALJ to reinstate C.O. was necessary. However, arguably C.O.'s "present educational placement" for stay-put purposes was in the school despite the temporary suspension, and the status quo was the in-school placement.

than the preservation of the status quo." Id. at 221; but see Bayonne Bd. of Educ. v. R.S. by K.S., 954 F. Supp. 933, 943-44 (D.N.J. 1997) (granting attorney's fees to plaintiffs who received stay-put order in an emergent hearing).

In this case, the ALJ reached his conclusion only thirteen days after the Board filed its motion and only six days after J.O. filed the cross-petition. Notwithstanding that the ALJ conducted a hearing at which he heard testimony and reviewed documents, there is no indication that he reached the merits of the parties' arguments. The ALJ's order explicitly provides that it is effective only until an appropriate placement could be found for C.O. or until a "further Order of an [ALJ], or until the issuance of a final decision in this matter." App. at 14-15.

We do not deprecate the importance of interim relief of the type received by appellants. The maintenance of a child's educational placement is an important aspect of IDEA. As the amici note, the stay-put provision is a critical means of enforcing IDEA's primary goals of providing an appropriate education to children with disabilities and preventing the unilateral exclusion of students with disabilities from school. See Tokarcik v. Forest Hills Sch. Dist., 665 F.2d 443, 453 (3d Cir. 1981) (finding that the stay-put provision was "clearly designed to minimize the detrimental effect of delay in resolving disputes over educational programs. . . . [and] ensures that a school cannot eject a child without complying with due process requirements"). Although parents who achieve favorable interim relief may be entitled to prevailing party attorney's fees as long as the interim relief granted derived from some determination on the merits, the District Court neither erred nor abused its discretion in denying the award of fees in this case.

III.

CONCLUSION

For the reasons set forth above, we will affirm the decision of the District Court denying appellants attorney's fees.

10

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11