**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-3156 & 23-3208
_____

MICAYLA AUGUSTYN

v.

WALL TOWNSHIP BOARD OF EDUCATION


Micayla Augustyn,
            Appellant in No. 23-3156

Wall Township Board of education,
            Appellant in No. 23-3208


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:20-cv-05218)
District Judge: Honorable James B. Day
_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 28, 2025

Before: SHWARTZ, KRAUSE, and PORTER, *Circuit Judges*

(Opinion filed: May 9, 2025)

John D. Rue
Krista H. Rue
John Rue & Associates
100 Overlook Center
Second Floor, Suite 9211
Princeton, NJ 08540

Donald A. Soutar
Coyle Law Group
201 Littleton Road
Suite 210
Morris Plains, NJ 07950

    *Counsel for Plaintiff-Appellant*

Gabrielle A. Pettineo
Kenney Gross Kovats & Parton
214 Park Avenue
Manalapan, NJ 07726

    *Counsel for Defendant-Appellee*

_____

OPINION OF THE COURT
_____

**KRAUSE**, *Circuit Judge*.

We have said it before, but after *Lackey v. Stinnie*, 145 S. Ct. 659 (2025), it bears repeating: A plaintiff who vindicates a statutory right under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482, is a prevailing party entitled to collect attorneys' fees, irrespective of whether that right is substantive or procedural. After an Administrative Law Judge (ALJ) dismissed her IDEA claim on the ground that it could not be heard in a due process hearing, Appellant Micayla Augustyn successfully appealed to the District of New Jersey and prevailed at summary judgment on her entitlement to the hearing she requested. Notwithstanding the objections of cross-appellant, the Wall Township Board of Education (Board), and consistent with *Lackey*, that procedural victory also entitled her to an award of attorneys' fees under our precedent in *H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406 (3d Cir. 2017). The District Court thus properly concluded Augustyn is a prevailing party, but because it erred in reducing her fee award, we will vacate and remand for a recalculation of the appropriate lodestar reductions.

## I.    BACKGROUND

For all the years Augustyn attended Wall High School, she was eligible for and received special education services pursuant to an individualized education plan (IEP) that provided for a variety of accommodations, including additional time to complete tests and homework assignments without penalty.

3

As Augustyn approached the conclusion of her fourth year in 2018, however, her mother and the Board diverged on the appropriate path for her secondary education: The Board asserted that Augustyn should graduate in the ordinary course and did not need extended schooling, while her mother, believing that the Board had failed to implement the required accommodations and to prepare Augustyn to transition out of high school, sought to keep Augustyn enrolled for an additional year.

When mediation failed, Augustyn filed a Petition for Due Process before an ALJ.[1] That Petition elaborated on her substantive claims, contending that by neglecting to revise her grades in light of later completed work, provide her with appropriate home instruction, or prepare her for post-secondary independent living, the Board had failed to provide Augustyn with the "free and appropriate education" (FAPE) required by the IDEA. She sought, among other things, for her grades to be updated consistent with her IEP, as well as compensatory education—relief substantially similar to what she had requested in mediation.

In response, the Board moved for partial dismissal of the Petition. And though the ALJ allowed one claim in the motion to proceed, she granted the Board's motion to dismiss Augustyn's grade revision claim, reasoning that a "special education due-process hearing" was not the "proper venue" to resolve that dispute. App. 60. Augustyn, believing that she

---

[1] Initially, the case was prosecuted on Augustyn's behalf by her mother, but once she reached the age of majority, Augustyn proceeded on her own behalf.

4

was entitled to a due process hearing on that claim under the IDEA, then appealed her right to that hearing to the District Court.[2]

There, both parties moved for summary judgment, and the District Court ruled in Augustyn's favor. Under the relevant New Jersey statute, the Court explained, a due process hearing is the appropriate venue to address disagreements regarding the provision of a FAPE, and because the IEP is "the core of the entitlement" to a FAPE, it is also the proper place to resolve a grade revision claim arising under an IEP. App. 150–51 (citation omitted). Accordingly, the Court concluded that the ALJ's decision "was made in error" and remanded the matter for further proceedings. App. 151.

Augustyn then moved for attorneys' fees, to which the District Court held she was entitled as a prevailing party under the IDEA attorneys' fee provision. 20 U.S.C. § 1415(i)(3)(B)(i)(I). As for the amount, the Court accepted the requested fee of $198,901.50 as the full lodestar, premised on reasonable hours and rates. But the Court then reduced that award by approximately 90%, to $23,079.10, on the ground that "the extremely limited nature of the procedural relief" Augustyn obtained rendered a full award "excessive." App. 3–4.

---

[2] Ultimately, Augustyn sought a due process hearing only on grade revision. She voluntarily dismissed her other remaining claims after completing her fifth year of school through operation of the IDEA's "stay put" provision, 20 U.S.C § 1415(j).

5

Augustyn now appeals the District Court's reduction of the fee award, while the Board cross appeals, claiming that there should have been no award in the first place because Augustyn was not a prevailing party.

## II. DISCUSSION[3]

We first address the question of Augustyn's prevailing party status before turning to the propriety of the District Court's fee reduction.

### A. Prevailing Party Status[4]

The Board contends that Augustyn is not a prevailing party on the grounds that she "did not 'succeed on a significant issue'" and "has never[] been denied the right to a hearing" under the IDEA. Answering Br. 11, 14. As the District Court correctly determined, the record proves otherwise.

The procedural safeguards that allow parents to challenge "any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a free appropriate public education to such child," are a significant feature of the IDEA. 20 U.S.C. § 1415(b)(6)(A). They entitle parents to "an impartial due process hearing" and allow for the award of attorneys' fees to a "prevailing party" in

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A), and it had authority to award attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(i). We have jurisdiction under 28 U.S.C. § 1291.

[4] Our review of a prevailing party status determination is plenary. *See H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 412 (3d Cir. 2017).

6

"any action or proceeding brought under" the statute. 20 U.S.C. §§ 1415(f)(1)(A), (i)(3)(B)(i). At least in the context of the IDEA, success on the merits of entitlement to that statutory right, albeit a "purely procedural" right, "can confer prevailing party status." *H.E.*, 873 F.3d at 413.

There are, of course, limits to the types of relief that can confer prevailing party status. The Supreme Court recently observed as much in *Lackey*, where it addressed whether the term "prevailing party" includes a party who had been awarded a preliminary injunction but whose case became moot before the entry of a permanent injunction. 145 S. Ct. at 666. As the Court explained, conferral of prevailing party status requires that a court has "conclusively resolve[d] a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties." *Id.* at 669. Thus, "[a] plaintiff who wins a transient victory on a preliminary injunction does not become a 'prevailing party' simply because external events convert the transient victory into a lasting one." *Id.* We reached a similar conclusion in *H.E.*, where we held that vindication of a procedural right confers prevailing party status under the IDEA, so long as the relief obtained "is not 'temporary forward-looking injunctive relief.'" 873 F.3d at 413 (quoting *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 230 (3d Cir. 2017)).

Here, that category of relief is not at issue. *See* Appellant's Supp. Br. at 2. The ALJ held she was not entitled to any hearing on her grade revision claim; the District Court on appeal conclusively resolved that claim by reversing the ALJ, granting summary judgment on Augustyn's entitlement to a due process hearing, and remanding for further

7

proceedings. So, just as in *H.E.*, Augustyn "vindicated [her] right" to a due process hearing, winning relief on the merits of her statutory claim that is "permanent" and "cannot be nullified later," and compels the Board to proceed in that statutorily prescribed forum. 873 F.3d at 413; *see also id.* at 407–08 ("[S]uccess on a claim for procedural relief can constitute a victory on the merits." (cleaned up)); *Lackey*, 145 S. Ct. at 670-71 (noting that prevailing party success includes "relief on the merits *pendente lite*"). Thus, unlike the plaintiffs in *Lackey*, the relief awarded here resulted in a "change in the legal relationship between the parties" that is both "enduring" and "judicially sanctioned." 145 S. Ct. at 669 (citations omitted). That makes Augustyn a "prevailing party" under the IDEA. *H.E.*, 873 F.3d at 413.

### B.    Fee Award Reduction

We turn next to the District Court's treatment of the fee award. In determining whether an award is reasonable, a court first calculates the lodestar by multiplying the reasonable hours worked by a reasonable hourly rate. *See City of Burlington v. Dague*, 505 U.S. 557, 559 (1992). The District Court's role is "not merely a passive" one, it has a "positive and affirmative function in the fee fixing process." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001). When calculating the lodestar, "[i]t should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed." *Id.* Once calculated, the lodestar "carries a 'strong presumption' of 'reasonable[ness]' and 'includes most, if not all, of the relevant factors constituting a reasonable attorney's fee.'" *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017) (alteration in original)

(quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010)).

To be sure, the "court can adjust a fee award upward or downward" after this point, *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009), but its "discretion is not unlimited," *Perdue*, 559 U.S. at 558. To the contrary, the lodestar "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue*, 559 U.S. at 552. So, "[a]fter calculating the lodestar, the court may deviate from it, but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"[5] *Souryavong*, 872 F.3d at 128 (quoting *Perdue*, 559 U.S. at 554). And if the

---

[5] There are twelve such factors: (1) requisite time and labor, (2) novelty and difficulty of the issues, (3) skill needed to perform the service properly, (4) preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *see Souryavong*, 872 F.3d at 128 ("[C]onsideration of *Johnson* 'factors' is permissible on the back end of a lodestar's calculation, as long as they are not already 'subsumed in the lodestar calculation.'" (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).

court does deviate, it must give "a reasonably specific explanation for all aspects" of its decision to do so. *Perdue*, 559 U.S. at 558.

In this case, Augustyn proposed a lodestar amount of $198,901.50, which encompassed four phases of litigation. Phase I accounted for fees accumulated in mediation; Phase II covered the Board's motion to dismiss before the ALJ; Phase III addressed the appeal in federal court; and Phase IV dealt with the fee application. The District Court accepted the proposed lodestar in full, finding that there was no basis to question the reasonableness of the hourly rate or the time spent on the litigation. But it then reduced the fee award from $198,901.50 to $23,079.10 based on its belief that Augustyn had achieved only "extremely limited success." App. 21.

There is no doubt that "the results obtained" is a legitimate factor for a court consider in its fee award calculation. *Souryavong*, 872 F.3d at 129 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). But in reaching its conclusion, the District Court relied on impermissible factors in its assessment of Phases II, III, and IV. We address each below.

Phase II. The District Court reduced the lodestar "by all fees incurred" in both mediation at Phase I and before the ALJ in Phase II on the grounds that (1) those were administrative proceedings not before it, App. 25, (2) that Augustyn was unsuccessful in those proceedings, and (3) that the proceedings "ha[d] nothing to do with the limited procedural success"

10

Augustyn achieved in federal court, App. 22. As to Phase II, these three conclusions were each mistaken.[6]

First, the District Court highlighted that Augustyn's prevailing party status was based only "on her procedural success *in this Court*." App. 21 (emphasis in original). But the fact that fees were incurred in related administrative proceedings, and that success was not ultimately won in those proceedings, is not dispositive: Courts may "award attorney's fees for time spent on administrative proceedings" to enforce or advance a right prior to litigation in federal court. *N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986). Second, before the ALJ, Augustyn was seeking to exercise a procedural statutory right—a due process hearing— as a necessary precursor to the vindication of her substantive statutory right—grade revision consistent with her IEP. And third, Augustyn's efforts to avoid dismissal of the claim in the first instance and then to reverse the ALJ's determination that she was not entitled to a due process hearing had everything to do with the relief she sought and successfully obtained on appeal: The District Court held she was entitled to exercise that procedural right and reversed and remanded so that she could do so. In short, because Augustyn's arguments against dismissal of the grade revision claim were later vindicated, the legal work required to make those arguments is compensable.

---

[6] As to Phase I fees, Augustyn "expressly concede[s] that these fees should only be considered" after remand because their accrual was unrelated to her right to a due process hearing. Appellant's Supp. Br. at 3.

Accordingly, the fact that she was unsuccessful before the ALJ was not a proper basis for entirely denying the Phase II fees.

Phase III. The District Court's 80% reduction in the fees incurred in its own proceeding also relied on mistaken premises. The District Court found that Augustyn's counsel "contribut[ed] to the ALJ's legal error" through the "confusing manner" in which counsel pleaded the grade revision claim. App. 30–31. Yet Augustyn's due process petition clearly and unambiguously alleges that "grading inaccuracies resulted from the District's failure to . . . properly and fully implement [Augustyn's] IEP[]," App. 110, and seeks "[a]n Order that the District review and revise grades in academic classes based on completed work that was not previously graded and included in the calculation of [Augustyn's] final grades," App. 120. In any event, "[t]he quality of an attorney's performance generally should not be used to adjust the lodestar" because quality considerations "normally are reflected in the reasonable hourly rate," *Perdue*, 559 U.S. at 553 (citation omitted), and here, the District Court had already accepted the hourly rate as reasonable.

Nor does the procedural nature of Augustyn's victory, without certainty of success on her underlying substantive claim on remand, justify a reduction. It is true that Augustyn sought additional relief at other points in this dispute, but the only claim before the District Court was Augustyn's statutory right to a due process hearing. This right was denied by the ALJ and then vindicated by the District Court on appeal, and *all* fees accrued in Phase III were associated with that claim, and that claim only. Having sought and "having been afforded a due process hearing, [Augustyn] 'accomplished the

12

objective[] of her litigation'" before the District Court in its entirety, irrespective of how the underlying claim would be resolved.[7]  *H.E.*, 873 F.3d at 413 (quoting *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979)).

To the extent that the District Court's reduction rested on its consideration of the Board's limited resources, that was also error because "the losing party's financial ability to pay is not a 'special circumstance'" justifying remittitur.  *Inmates of Allegheny Cnty. Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir. 1983) (quoting *Ent. Concepts, Inc., III v. Maciejewski*, 631 F.2d 497, 507 (7th Cir. 1980)).  So too for any consideration given to Augustyn's ability to raise other alleged violations of her IEP at a due process hearing.  The right initially denied and, as a result of counsel's efforts, restored, was Augustyn's right to exercise her statutory entitlement to a due process hearing on her grade revision claim.  Her ability to pursue a different remedy for different misconduct has no bearing on the statutory entitlement vindicated in the District Court.

Phase IV.  Finally, the District Court reduced the fee award associated with the fee application simply by extending the 80% reduction it applied to the other proceeding before it at Phase III.  However, "the reduction analysis for the fees

---

[7] The District Court also faults Augustyn for failing to avail herself of the remand, but neither party briefed this issue in the prior proceeding, and here Augustyn maintains that she fully intends to pursue the claim and has been unable to do so because of a jurisdictional issue—an argument to which the Board offered no response.  *See* Opening Br. at 25-26; Reply Br. at 10 n.2.

13

generated from litigating the fee petition is independent from the reduction analysis applied to the underlying litigation." *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 142 (3d Cir. 2018). So, now that Augustyn has been required to appeal the reduction in her fee application before this Court—and has prevailed—the District Court must reassess its "fees on fees" award considering not only the fees incurred litigating the petition in the District Court, but also the additional costs incurred in this appeal, as well as the reevaluation of Phase II and Phase III fees.

\*\*\*

In sum, the District Court properly concluded that Augustyn is a prevailing party and accepted her proposed lodestar, but it reduced the lodestar based on improper considerations. Certainly, a court can make reductions in light of "the results obtained" if this factor was for some reason "not already subsumed" in its calculation of the lodestar. *Souryavong*, 872 F.3d at 128-29. But it may not use "the results obtained" as a shroud for the consideration of impermissible factors. Because that constitutes an abuse of discretion, the District Court's fee award cannot stand.

## III. CONCLUSION

For the foregoing reasons, we will vacate the District Court's order and remand for proceedings consistent with this opinion.

14

**PORTER**, *Circuit Judge*, concurring in part and concurring in the judgment.

I agree that Augustyn is a prevailing party under the Individuals with Disabilities Education Act. I also agree that, when reducing Augustyn's attorneys' fees, the District Court incorrectly blamed Augustyn for pleading her grade-revision claim in a confusing manner that protracted litigation, and considered impermissible factors.

I write separately, however, because the majority goes too far in its criticism of the District Court's reasoning and strips the District Court's discretion to reduce attorneys' fees based on the limited results Augustyn obtained in litigation— a remand order for a due process hearing to consider a single claim.

I

The starting point for determining an award of reasonable attorneys' fees is the calculation of the "lodestar" amount, which is "the product of the attorney's appropriate hourly rate and the number of hours the attorney reasonably expended on the action." *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 150 (3d Cir. 2009) (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005)). The District Court did not question Augustyn's attorneys' rates or hours and accepted the lodestar amount.

After calculating the lodestar, district courts may consider other appropriate factors "not subsumed in the lodestar," including "the amount involved and the results obtained." *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d. Cir. 2017) (quoting *Hensley v. Eckerhart*, 461 U.S.

424, 430 n.3 (1983)). Indeed, when considering attorneys' fees for a petitioner who "has achieved only partial or limited success," the "most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

Consideration of the results obtained is especially relevant to Augustyn's case. Augustyn sought four forms of relief before the Administrative Law Judge:[1] (1) compensatory education because of Wall Township School District's failure to provide a Free Appropriate Public Education ("FAPE"), (2) an appropriate transition plan to prepare Augustyn for post-graduate education, employment, and independent living, (3) an order compelling Wall School District to review and revise her grades based on completed work that it had not graded and included when calculating her final grades, and (4) compensatory, consequential, and punitive damages for infliction of emotional distress. All of Augustyn's claims before the ALJ were ultimately dismissed.

At the District Court, Augustyn appealed, and ultimately succeeded on, only her grade-revision claim. Even then, she obtained only procedural relief—an order to remand her grade-revision claim to an ALJ for a due process hearing to determine whether she had received a FAPE. At the time of the District Court's decision to award attorneys' fees, Augustyn had not availed herself of that hearing.

II

---

[1] Augustyn also remained at Wall High School for a fifth year of high school, under the IDEA's automatic "stay-put" provision. *See* 20 U.S.C. § 1415(j). The parties did not litigate this relief before the ALJ or District Court.

2

Despite acknowledging that district courts may consider the results obtained when awarding attorneys' fees, the majority undermines the District Court's ability to do so.

A

The majority holds that "the fact that [Augustyn] was unsuccessful before the ALJ was not a proper basis" for reducing fees incurred during the administrative proceeding because her arguments before the ALJ were a necessary precursor to obtaining a due process hearing for her grade-revision claim. Maj. Op. at 12.

But the District Court acknowledged that fees incurred during administrative proceedings are appropriate in some cases and did "*not* hold that as a matter of law, fees incurred during administrative proceedings are never recoverable where success is only achieved on appeal in federal court." App. 25 n.5. The District Court reduced Augustyn's fees because she obtained "circumscribed" relief in the District Court and the "legal work performed during those early phases did not contribute to [Augustyn's] success." App. 24. The District Court considered "the specific context and nature of the success that [Augustyn] achieved in [the District Court] . . . relative to the context and nature of the administrative proceedings." App. at 25 n.5. Indeed, Augustyn sought four forms of relief before the ALJ but ultimately obtained one limited form of relief at the District Court.

To be sure, as the majority notes, the District Court erred by inaccurately characterizing Augustyn's due process petition and then finding that Augustyn's "confusing" petition contributed to the ALJ's mistake and protracted litigation. App. 30. But the District Court still had discretion to consider

3

"the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

B

I also agree with the majority that the District Court improperly considered Wall School District's financial resources and speculated on Augustyn's likelihood of success at her due process hearing when reducing fees incurred before the District Court.

But the majority separately concludes that, by obtaining a due process hearing, Augustyn "'accomplished the objective[] of her litigation' before the District Court in its entirety, irrespective of how the underlying claim would be resolved." Maj. Op. at 12–13 (quoting *H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 413 (3d Cir. 2017)).

Though the majority quotes this Court's decision in *H.E.*, it reads that case for more than it says. In *H.E.*, we held that when a plaintiff vindicates her right to an IDEA procedural due process hearing, like Augustyn here, "she is a 'prevailing party'" eligible for attorneys' fees. *H.E.*, 873 F.3d at 413. The *H.E.* Court's mention of a plaintiff "accomplish[ing] the objectives of her litigation," *id.* (quoting *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979)), was in the context of deciding prevailing party status—not, as the majority implies, the district court's discretion in awarding attorneys' fees to those prevailing parties.

Furthermore, the student in *H.E.* pursued and obtained substantive relief following the district court's remand order.

*Id.* at 410. By contrast, Augustyn never availed herself of her due process hearing, let alone obtained substantive relief.

The majority fashions a rule that every procedural victory would constitute complete success for awarding attorneys' fees, collapsing the "prevailing party" inquiry and the "reasonable attorneys' fees" inquiry into one inquiry. But success is a matter of degree in light of all relief sought by the petitioner, not an all or nothing proposition. We afford district courts discretion to weigh "the degree of success obtained" when awarding attorneys' fees. *Hensley*, 461 U.S. at 436. The majority's rule downplays that discretion.

C

The District Court was within its discretion to reduce Augustyn's fees based on the limited procedural relief she obtained. Because the majority's reasoning would unduly limit that discretion, I respectfully concur in the judgment.

5